U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 2 2 2013

CLERK, U.S. DISTRICT COURT
By_____
          Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ROLANDO VASQUEZ,                  §
                                  §
            Petitioner,           §
                                  §
v.                                §      No. 4:12-CV-871-A
                                  §
WILLIAM STEPHENS, Director,[1]    §
Texas Department of Criminal      §
Justice, Correctional             §
Institutions Division,            §
                                  §
            Respondent.           §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Rolando Vasquez, a state prisoner incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against William Stephens, Director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

---

[1] Effective June 1, 2013, William Stephens succeeded Rick Thaler as the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Director Stephens "is automatically substituted as a party." FED. R. CIV. P. 25(d).

## I.   Procedural History

On November 16, 2006, a jury found petitioner guilty of engaging in organized criminal activity (Count One) and murder (Count Two) in the Criminal District Court Number Two of Tarrant County, Texas, Case No. 0991337D, and assessed his punishment at 25 years' imprisonment on Count One and life imprisonment on Count Two.  (SHR at 70[2])  Petitioner appealed his convictions, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused his petition for discretionary review.  (SHR at 72-86) *Vasquez v. State*, PDR No. 1659-08.  Petitioner also sought postconviction state habeas corpus relief, to no avail.  (SHR at cover)

## II.   Issues

Generally, petitioner raises nine grounds for relief, in which he asserts there was no evidence to support his convictions (grounds one and four), the state engaged in prosecutorial misconduct (ground two), the trial court abused its discretion by allowing certain testify over defense objections (grounds three, six, and seven), he received ineffective assistance of trial

---

[2]"SHR" refers to the state court record of petitioner's state habeas proceeding in WR-75,113-02.

2

counsel (grounds five and eight), and the offenses were
improperly joined (ground nine). (Pet. at 6-7 & Insert; Pet'r
Mem. at 2-21)

### III.   Rule 5 Statement

Respondent asserts that petitioner's claims are exhausted as
required by § 2254(b)(1)(A) and that the petition is neither
barred by limitations nor subject to the successive-petition bar
under § 2244(b) & (d). (Resp't Ans. at 4)

### IV.   Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf
of a person in custody pursuant to the judgment of a state court
shall not be granted with respect to any claim that was
adjudicated on the merits in state court proceedings unless he
shows that the prior adjudication:  (1) resulted in a decision
that was contrary to, or involved an unreasonable application of,
clearly established federal law, or (2) resulted in a decision
that was based on an unreasonable determination of the facts in
light of the evidence presented in the state court.  28 U.S.C. §
2254(d).  A decision is contrary to clearly established federal
law if the state court arrives at a conclusion opposite to that
reached by the Supreme Court of the United States on a question

3

of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

In this case, the state habeas court entered express findings of fact, which petitioner has failed to rebut by clear and convincing evidence, and the Texas Court of Criminal Appeals

4

denied relief without written order.  (SHR at 53-56)  Under these circumstances, this court must defer to the state habeas court's factual findings and may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied.  *Townsend v. Sain,* 372 U.S. 293, 314 (1963)[3]; *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997).

### *(1) and (4)  No Evidence*

Petitioner claims there was no direct or circumstantial evidence to support his convictions or affirmatively link him to the murder weapon.  He directs the court's attention to the fact that Duran, the state's only eyewitness, testified he saw petitioner shoot the victim three times in the head and temple, but the victim was not shot in the head or neck area, that surveillance pictures and video did not show petitioner in possession of the weapon, that there were twelve latent fingerprints found on the murder weapon and two on the magazine, none of which matched his prints, that DNA found on a beer can

---

[3]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d).  *Harris v. Oliver*, 645 F.3d 327, 330 n.2 (5th Cir. 1981).

near the scene and matching a beer can found between the victim's legs belonged to a female, and that Ramirez gave conflicting statements to the police.   (Pet. at 6-7; Pet'r Mem. at 2-5, 9-10)

The state appellate court addressed the issue, in the context of a factual sufficiency analysis,[4] as follows:

> When determining factual sufficiency, we review all the evidence in a neutral light, favoring neither party.  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust.  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.
>
> In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction."  We cannot conclude that a conviction is

---

[4]In *Brooks v. State*, 323 S.W.3d 893, 894-95, 912-13 (Tex. Crim. App. 2010), a plurality of the Texas Court of Criminal Appeals abolished the factual sufficiency review it had previously announced in *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its progeny and adopted the *Jackson v. Virginia, infra*, legal sufficiency standard as the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.  *Brooks,* 323 S.W.3d at 894-95, 912-13.

clearly wrong or manifestly unjust simply because we
would have decided differently than the jury or because
we disagree with the jury's resolution of a conflict in
the evidence.  We may not simply substitute our
judgment for the fact-finder's.  Unless the record
clearly reveals that a different result is appropriate,
we must defer to the jury's determination of the weight
to be given contradictory testimonial evidence because
resolution of the conflict "often turns on an
evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was
delivered."  Thus, we must give due deference to the
fact-finder's determinations, "particularly those
determinations concerning the weight and credibility of
the evidence."

When reviewing a factual-sufficiency challenge, we
must discuss the evidence appellant claims is most
important in allegedly undermining the jury's verdict.
In this case, appellant argues that the evidence is
factually insufficient to support his murder conviction
because (1) no physical evidence linked him to the
crime; (2) the trial testimony of David Mata, Jessica
Ramirez, Jesus Duran, and Mark Monreal "conflicts with
each other, with their statements previously given to
the police, and with the forensic evidence produced at
trial"; and (3) because Mata, Duran, and Monreal had
lengthy criminal records.

A person commits murder if he either (1)
intentionally or knowingly causes the death of an
individual; or (2) intends to cause serious bodily
injury and commits an act clearly dangerous to human
life that causes the death of an individual.

The jury is the sole judge of the facts, the
credibility of the witnesses and the weight to be given
the evidence.  Therefore, the jury is free to believe
or disbelieve all or part of any witness's testimony.
A factual-sufficiency challenge will not necessarily be
sustained simply because the record contains
conflicting evidence upon which the fact-finder could
have reached a different conclusion.

7

The evidence showed that appellant was a member of a Fort Worth street gang, Varrio Northside ("VNS"). Juan Rodriguez and David Mata were members of a rival gang, the Los Homeboys ("LHB"). Animosity between the gangs dated back to 1993 when Mata's older brother, LHB-gang-member Greg Mata, murdered VNS-gang-member Noah Soto.

On the night Rodriguez was killed, he and Mata were sitting in his car in the parking lot outside Jessica Ramirez's apartment. Appellant and Jesus Duran walked by and tried to see who was in the car.

Mata knew appellant did not like him because his brother had killed Soto years before. Mata asked Rodriguez to take him home. Rodriguez told him not to worry because Rodriguez and appellant were both members of another gang and had recently hung out together. Rodriguez exited the car alone and shook hands with appellant and Duran.

The two insisted that Mata also exit the car. Mata did so to avoid any trouble. Appellant asked for Mata's name. When Mata said, "David Mata," appellant lifted his shirt, drew a pistol, cocked it, put it back in his pants, and asked if he was Greg Mata's brother. Mata acknowledged that he was, the scene became tense, and Mata believed something would happen.

Appellant demanded Ramirez's cell phone "before [he did] something stupid." Mata heard appellant say into the phone, "Yeah, he's here right now, I got him here right now."

Rodriguez urged Mata to leave, insisting that he could keep appellant and Duran from doing anything. Eventually, Mata went around the apartment building to use the restroom and did not come back.

Realizing that Mata had gone, appellant "snapped," re-drew the pistol, pointed it at Rodriguez and ordered him into the car. Appellant instructed Duran to follow them. Not far from the apartment-complex exit, Duran

8

saw appellant shoot Rodriguez.

From inside her apartment, Ramirez heard gunshots. She called appellant several times, who, when he finally answered, told her that he had shot Rodriguez.

Sometime later, appellant talked to Mark Monreal, an original VNS member and Soto's cousin. Appellant told Monreal that he had killed a friend of Greg Mata in a car to avenge Soto's murder. Appellant asked if the killing would promote him in the gang.

At the house where appellant was arrested, police found a Taurus pistol wrapped in a blue towel resting in a tree stump. Forensic testing linked the pistol to projectiles and cartridge cases recovered from the site of Rodriguez's killing.

Having reviewed all the evidence in a neutral light, we cannot say that the evidence supporting appellant's murder conviction is so weak that the verdict seems clearly wrong and manifestly unjust or that the verdict is against the great weight and preponderance of the evidence. Therefore, we find the evidence factually sufficient. We overrule point one.

In point two, appellant claims that the evidence is factually insufficient to sustain his conviction for engaging in organized criminal activity because, even if he killed Rodriguez, his actions "were performed by [himself], alone, and not as part of a common scheme, organization, or combination[ ] to establish, maintain or participate as a member of a criminal street gang." He argues that "a single offense, committed by a single actor, even if given a genesis in gang activity" does not constitute engaging in organized criminal activity.

A person commits the offense of engaging in organized criminal activity if, with intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits or conspires to commit . . . murder. A criminal street gang is three or more

persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities.  Under the plain language of § 71.02(a), a person may be convicted of engaging in organized criminal activity by individually committing murder.

Moreover, the evidence clearly established that appellant committed the offense of engaging in organized criminal activity.  Appellant is a member of a criminal street gang, VNS, one of the larger gangs in Fort Worth, with three or more members.  VNS has a common identifying sign or symbol and identifiable leadership. Its members regularly or continuously associate in the commission of criminal activities, including assaults, drug offenses, weapons violations, burglaries, and homicides.

Appellant drew a pistol from his pants, cocked it, and returned it to his pants when he learned that Mata shared his last name with someone who had killed a fellow gang member in the past.  When appellant learned that Mata was the brother of the one who had killed his fellow gang member, the scene became tense and Mata feared that something would happen.  Appellant made a telephone call, telling someone on the other end, "Yeah, he's here right now, I got him here right now."

When Mata left at the insistence of Rodriguez, and appellant realized that Mata was not coming back, he "snapped," pulling the gun on Rodriguez.  Appellant instructed Duran to follow him, and appellant and Rodriguez left in Rodriguez's car.  After traveling a short distance, appellant shot Rodriguez.

Appellant told Monreal, a senior gang member in VNS, that he had killed a friend of Greg Mata's in a car to avenge the death of Monreal's cousin, Soto, whom Greg Mata had killed years before.  Appellant asked Monreal if killing Rodriguez meant he could get his "stripes" in the gang, i.e., if he could move up in its hierarchy.

Mata testified that Rodriguez was killed because he was Mata's friend and "because he got [Mata] out of there." Mata testified that appellant was after him, was angry that Rodriguez had helped him, and decided to kill Rodriguez after Mata left.

Viewing all the evidence in a neutral light, we cannot say that the jury's verdict seems clearly wrong and manifestly unjust, nor that it is against the great weight and preponderance of the evidence. Because the evidence is factually sufficient to sustain the jury's verdict that appellant is guilty of engaging in organized criminal activity, we overrule point two.

(SHR at 73-81) (footnotes and citations omitted)

A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense. *Foy v. Donnelly,* 959 F.2d 1307, 1313 (5th Cir. 1992). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence. The standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). Under this standard, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319.

Under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review. *Schlup v.*

*Delo*, 513 U.S. 298, 330 (1995).  Determining the weight and credibility of the evidence as well as resolving any inconsistencies in the evidence are within the sole province of the jury.  *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992).  Courts view any required credibility determinations in the light most favorable to the guilty verdict.  *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000).  They do not second-guess the weight or credibility given the evidence.  *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999).

Although based on state law, the state court's decision is not contrary to *Jackson*.  Petitioner asserts there is no evidence whatever connecting him to the murder.  Granted, there is no physical evidence implicating petitioner in the murder, however there is witness testimony.  Reviewing the evidence in the light most favorable to the verdict, and assuming the jury resolved the inconsistencies in the witnesses' testimony, a rational jury could have found beyond a reasonable doubt that petitioner intentionally murdered Rodriguez and that as a member of the street gangs Los Homeboys and Tango Blast he committed murder. As noted by the state habeas court, petitioner's argument goes to the weight and credibility of the evidence.  The state court

correctly concluded that the weight to give conflicting or
contradictory evidence is within the sole province of the trier
of the fact.  *Jackson*, 443 U.S. at 319.

### (2)  *Prosecutorial Misconduct*

Petitioner claims the state engaged in prosecutorial
misconduct by allowing perjured testimony to go uncorrected.
(Pet. at 6; Pet'r Mem. at 5-7)  Specifically, petitioner
complains of the testimony of Jesus Duran that petitioner shot
Rodriguez three times in the head, when the evidence showed there
were more than sixteen shots fired, none of which were to the
victim's head or neck.  (Pet'r Mem. at 5-7)

The state habeas court construed petitioner's claim to be
that "the inconsistencies in the witnesses' testimony were
evidence of perjury."  Citing to *United States v. Bagley*, and
relevant state law, the court noted that "[k]nowingly using
perjured testimony amounts to prosecutorial misconduct."  (SHR at
57)  The court further noted that to prove the state knowingly
used perjured testimony, petitioner must show the testimony was
false, the state knowingly used the false testimony, and there is
a reasonable likelihood that the false testimony affected the
judgment of the jury.  (*Id.*)  Because petitioner provided no
evidentiary basis for the claim, the state court concluded he had

failed to meet this burden.  (*Id.* at 58)  The state court further
concluded that "[i]nconsistent testimony goes to the credibility
of the State's witnesses and does not establish the use of
perjured testimony."  (*Id.*)

Petitioner has not demonstrated that the state court's
adjudication of the issue was contrary to, or involved an
unreasonable application of, clearly established Supreme Court
precedent, and the state court's decision comports with Fifth
Circuit case.  *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir.
1990); *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988)
(inconsistencies in witnesses' testimony at trial are to be
resolved by trier of fact and do not suffice to establish that
certain testimony was perjured).

### (3) - (7)  *Abuse of Discretion*

Petitioner claims the trial court abused its discretion by
allowing the state to call Richard Almendarez of the Fort Worth
Sheriff's Office, a gang intelligence officer, to testify
regarding gang relations and tattoos without timely notice to the
defense and against a defense objection (grounds three and six).
(Pet. at 7 & Insert; Pet'r Mem. at 7-9, 16-18)  Petitioner also
claims the trial court abused its discretion by allowing hearsay
testimony by Mark Montreal against a defense objection.  (Pet.

14

Insert; RR, vol. 5, at 47)

The state habeas court recommended denial of these claims because they could have been but were not raised on direct appeal and were thus procedurally barred.  (SHR at 54, 56, 58, 61) Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default.[5]  *See Coleman v. Thompson*, 501 U.S. 722, 729, (1991); *Johnson v. Puckett*, 176 F.3d 809, 823 (5th Cir. 1999); *Fisher v. State*, 169 F.3d 295, 300 (5th Cir. 1999).  The state court clearly relied upon firmly established and regularly followed state procedural rules to recommend denial of these claims, which represents an adequate state procedural bar to federal habeas review.  *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (holding Fifth Amendment claim is procedurally defaulted because not raised on direct appeal); *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (holding "the Great Writ should not be used to litigate matters which

---

[5]Although respondent does not raise the defense, a federal habeas court has the discretion to raise a procedural default sua sponte.  *Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006); *Magouirk v. Phillips,* 144 F.3d 348, 357-58 (5th Cir. 1998).

should have been raised on appeal").   Therefore, absent a showing

of cause and prejudice or a miscarriage of justice, such showing

not having been demonstrated, these claims are procedurally

barred from this court's review.

### (5) and (8)   Ineffective Assistance of Counsel

Petitioner claims trial counsel was ineffective by failing

to adequately investigate his case and move for a directed

verdict.  (Pet. Insert.; Pet'r Mem. at 10-14, 18-20)  Petitioner

asserts counsel relied solely on the state's file and should have

subpoenaed Jessica Ramirez's phone records to show she was not

being truthful about him calling her and telling her he shot the

victim, conducted independent testing of the evidence, including

DNA and ballistics testing, interviewed potential witnesses, and

moved for a directed verdict when the state presented no physical

evidence connecting him to the murder.  (Pet'r Mem. at 11-13, 19)

A criminal defendant has a constitutional right to the

effective assistance of counsel at trial.  U.S. CONST. amend. VI,

XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v.

Washington*, 466 U.S. 668, 688 (1984).  An ineffective assistance

claim is governed by the familiar standard set forth in

*Strickland v. Washington.*  466 U.S. at 668.  To establish

ineffective assistance of counsel a petitioner must show (1) that

16

counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.  Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

Further, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89.  Judicial scrutiny of counsel's performance must be highly deferential, and "doubly deferential when it is conducted through the lens of federal habeas review." *Yarbourough v. Gentry*, 540 U.S. 1, 6 (2003).

Where the state courts have applied the *Strickland* attorney-performance standard to factual findings, a federal court will defer to the state courts' determination unless it appears the decision was contrary to or involved an unreasonable application of *Strickland*, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82  (5th Cir. 2002).

The state habeas judge, who did not preside over

petitioner's trial, conducted a hearing by affidavit with regard

to petitioner's ineffective assistance claims.   Trial counsel,

Katheryn Haywood, filed an affidavit and supporting

documentation, responding to petitioner's allegations as follows:

> Counsel spent over 18 months preparing for this
> trial.   Defendant was offered 45 years and rejected the
> plea offer.   Counsel advised client that this case was
> a life case.   Client offered to plead guilty and accept
> 10 TDC, which the state refused.   Shortly before trial,
> client was offered 35 TDC which he rejected.
>
> Trial was very successful.   Jury was out for quite
> a while.   Client was difficult and argumentative during
> counsel's representation of him.   His attitude changed
> after the trial.   He was very demonstrative and very
> appreciative of counsel's efforts.   The trial was
> contentious and contained much heated argument.
> Client's Aunt Connie Delgado praised counsel over and
> over stating that she never believed a non-relative
> would fight so hard for her nephew.
>
> Below are the 5 grounds alleged by Mr. Vasquez as to my
> representation:
>
> 1.   Counsel did not hire a ballistics expert to review
>      state's ballistic report as counsel felt to do so
>      was unnecessary.   Counsel was able to review
>      report and cross examine state's expert.   Counsel
>      found no flaws in methodology or testimony of
>      ballistic's expert.   The collection of evidence
>      was flawless and the examination by the book.
>
> 2.   Counsel investigated case for 18 months.   Counsel
>      read hundreds of documents, hired a private
>      investigator with court provided funds and
>      thoroughly reviewed all statements and exhibits.
>      Counsel even appealed pay to court after the trial
>      because amount of work counsel put into trial was
>      not reflected in pay approved by court.   Trial

court even admonished counsel on amount of work
she did stating that a simple murder trial should
not require the number of hours counsel put into
case.

3.   Counsel interviewed witnesses through private
     investigator, written statements provided by state
     and thorough cross examination.  Counsel was able
     to shred several witness's testimony by
     demonstrating deception to the police.  Counsel
     also hired a mitigation expert with court funds.
     His name was Dr. Orozepda.  Client refused to
     speak with him or discuss family life or past with
     him.  Not able to use him in trial due to lack of
     cooperation of client.

4.   Counsel purposely did not subpoena cell phone
     records from Jessie Ramirez because counsel wanted
     the only evidence to be the testimony of Ms.
     Ramirez, who counsel found to be incredible.
     Phone records would have been available to the
     state and jury to support the claim of a phone
     call.  Counsel wanted the sole evidence to be that
     of a witness who failed a polygraph and who failed
     to mention phone call to police in original police
     interview.

5.   Counsel does not have trial transcript and cannot
     remember if she moved for a directed verdict.
     However, counsel will maintain that she does not
     do so in every case.  It is unethical to make a
     written or oral motion that counsel does not
     believe is justified by the facts and evidence.
     In this case the state did provide a scintilla of
     evidence to support each and every allegation in
     the indictment.

Counsel did a very exhaustive jury selection.  Counsel
crossed each witness herself and argued every point
Applicant makes in his closing argument.

It should be noted that Applicant did not share any
information with counsel about this crime.  He

19

maintained his innocence and stated he "knew things"
but did not disclose any of this information to
counsel.

(SHR at 44-45)

The state habeas court entered findings of fact consistent

with counsel's affidavit as follows:

16. Applicant presents no evidence to support his
claim that an expert would have provided
beneficial testimony regarding the ballistic
evidence.

17. Applicant does not allege what flaws were in the
methodology or testimony of the ballistic expert.

18. Hon. Haywood did not hire a ballistics expert to
review the ballistic report because she determined
it was not needed as she was able to review the
report and cross-examine the state's expert.

19. Based on Hon. Haywood's experience, she found no
flaws in the methodology or testimony of the
ballistic expert.

20. Hon. Haywood concluded that the "collection of
evidence was flawless and the examination by the
book."

21. Applicant presents no evidence to support his
claim that his counsel failed to conduct an
independent investigation.

22. Hon. Haywood asserts that she investigated this
case for 18 months.

23. Hon. Haywood read hundreds of documents and
reviewed all the statements and exhibits.

24. Hon. Haywood was appointed a court appointed
investigator to assist in the investigation.

25. Applicant presents no evidence to support the State's witnesses were willing to be interviewed by counsel and her investigator.

26. Hon. Haywood prepared for cross-examination of State's witnesses by investigating written statements and the information discovered by the investigator.

27. Hon. Haywood was able to successfully cross-examination several of the witnesses.

28. Hon. Haywood received a court-appointed mitigation expert.

29. Applicant presents no evidence to support his claim that counsel should have obtained the cell phone records of Jessica Ramirez.

30. Hon. Haywood chose not to subpoena the cell phone records of Jessica Ramirez because she only wanted the testimony of Jessica Ramirez before the jury.

31. Hon. Haywood was concerned that the phone records would have supported the claim of the phone call.

32. Applicant presents no evidence to support his claim that counsel should have moved for a directed verdict.

33. Hon. Haywood does not move for a mistrial when it is not supported by the evidence.

34. Hon. Haywood believed that the State did provide a scintilla of evidence to support every allegation in the indictment.

35. Applicant presents no evidence that a motion for directed verdict would have been granted.

(SHR at 54-56) (citations to the record omitted)

Applying the *Strickland* standard, as well as state law

21

requiring a review of the totality of counsel's representation in deciding an ineffective assistance claim and evidentiary support "firmly grounded in the record," the state court entered the following legal conclusions:

29. Applicant has failed to prove that counsel needed a ballistic expert to understand and cross-examine the ballistic evidence.

30. Applicant has failed to prove that counsel's representation was deficient because she did not hire a ballistic expert.

31. Applicant has failed to prove that counsel failed to conduct a proper independent investigation.

32. Applicant has failed to prove that the State's witnesses were available for counsel to interview.

33. Applicant has failed to prove that counsel was not sufficiently prepared to cross-examine the State's witnesses.

34. Applicant has failed to prove that counsel's representation was deficient because she did not interview the State's witnesses.

35. Applicant has failed to prove that the cell phone records would have benefitted his defense.

36. Counsel's decision to not get the cell phone records was the result of reasonable trial strategy.

37. Applicant has failed to prove that counsel's representation was deficient because she did not get the cell phone records of Jessica Ramirez.

38. Defense counsel has no ground to move for an instructed verdict when the State presents more

than a scintilla of evidence in its case-in-chief that would have supported a guilty verdict.

39. Counsel's decision to not move for a directed verdict because there was more than a scintilla of evidence to support the indictment was the result of reasonable trial strategy.

40. Applicant has failed to prove that counsel's representation was deficient because she did not move for an instructed verdict.

41. Applicant has failed to prove that his trial counsel's representation fell below an objective standard of reasonableness.

42. A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct sufficient to undermine confidence in the outcome is not established.

43. Applicant has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had counsel hired a ballistic expert.

44. Applicant has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had counsel done more investigation.

45. Applicant has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had counsel personally interviewed the State's witnesses.

46. Applicant has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had counsel obtained the cell phone records of Jessica Ramirez.

23

47.  Applicant has failed to show that there is a
     reasonable probability that the outcome of the
     proceeding would have been different had counsel
     moved for a directed verdict.

48.  Applicant has failed to show that there is a
     reasonable probability that, but for the alleged
     acts of misconduct, the result of the proceeding
     would have been different.

49.  Applicant has failed to prove he received
     ineffective assistance of trial counsel.

(SHR at 59-60) (citations omitted)

Deferring to the state court's findings, petitioner has

failed to demonstrate the state courts unreasonably applied

*Strickland*.  28 U.S.C. § 2254(d).  It is well settled that mere

conclusory allegations of ineffective assistance of counsel do

not raise a constitutional issue in a habeas proceeding.  *Ross v.*

*Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).  Further, to the

extent petitioner's claims relate to counsel's strategic

decisions, such claims are "virtually unchallengeable" on federal

habeas review.  *Strickland,* 466 U.S. at 690. Finally, this

court's independent review of the record reflects that counsel

vigorously defended petitioner's rights and performed capably

prior to and during petitioner's trial.

### (9)  "Misjoined Indictment"

Lastly, petitioner claims he was denied a fair trial because

24

the state alleged both murder and organized crime in the same
indictment, thereby allowing the jury to hear evidence of gang
activities while determining his guilt/innocence on a murder
charge, and depriving him of an unanimous verdict.  (Pet. Insert;
Pet'r Mem. at 20-21; SHR at 68)

The state habeas court found that petitioner did not request
a severance of the offenses and that the appellate court had
found the evidence factually sufficient to support both counts.
(SHR at 56)  Furthermore, the state habeas court concluded that,
as a matter of state law, a defendant can be prosecuted in a
single action for all offenses arising out of the same criminal
episode and that petitioner's failure to object to the
consolidation of the counts waived his right to complain about
the joinder.  (SHR at 56-61)

Federal habeas proceedings do not afford review of a state
court's interpretation of its own law.  *Charles v. Thaler*, 629
F.3d 494, 500 (5th Cir. 2011); *Creel v. Johnson*, 162 F.3d 385,
395 (5th Cir. 1998).

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby,
denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED November ___22___, 2013.


JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE